## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JENNIFER S.,[1]

      Plaintiff,

v.                                     Case No. 20-cv-1021-SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

### MEMORANDUM OPINION AND ORDER[2]

Plaintiff argues that the Administrative Law Judge ("ALJ") who denied her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434, committed several instances of error. She argues that the ALJ erred in giving little weight to the opinion of two examining consultants, Dr. Moedl and Dr. Owen. She also argues that the ALJ failed to consider the entire record when determining the effects of her symptoms on her residual functional capacity ("RFC"), which in turn led to tainted vocational testimony. Finally, she argues that the ALJ failed to rule on her request to reopen her prior filed application and requests the Court award benefits outright dating from that prior application.

The Court finds several errors by the ALJ in assessing both doctors' reports as well as Plaintiff's subjective symptom evidence of her headaches and migraines. Given the nearly eleven-year age of this case and the ample facts already available in the record, the Court

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 5, 6. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

GRANTS Plaintiff's Motion to Reverse and Remand for Rehearing, With Supporting Memorandum [Doc. 22] and awards benefits outright on Plaintiff's current application. The Court has no jurisdiction to review the ALJ's action or inaction on Plaintiff's request to reopen her prior application.[3]

## **APPLICABLE LAW**

A.   Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)   At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)   At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

---

[3] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that

4

correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Plaintiff argues the ALJ made several errors when analyzing the medical opinions and the subjective symptom evidence. For the reasons below, the Court agrees the ALJ did not properly reject the opinions of examining doctors Moedl and Owen. The Court also agrees the ALJ did not properly analyze the evidence with respect to Plaintiff's back pain and headaches. Due to the age of this application and the fact that it is in this Court for the third time, the Court awards benefits outright.

## I.   Medical Opinions

### A.   Legal standard

The ALJ is required to evaluate every medical opinion she receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017, as the present claim is, the Commissioner's regulations provide guidance for evaluating opinions from acceptable medical sources using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

These same factors apply to opinion evidence from non-acceptable medical sources, 20 C.F.R. §§ 404.1527(f), 416.927(f), but a medical opinion from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is a non-acceptable medical source. SSR 06-03p, 2006 WL 2329939, at *4-5.

The ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

B.   Dr. Moedl's Opinion

Dr. Moedl stated that Plaintiff's abilities to walk, lift, stand, and sit were "less than the two hour time that you usually have as the limit," but he also characterized her abilities in those areas as "fairly normal" and opined that he "[did] not find these particularly disabling." AR 415. The ALJ assigned "little weight" to these conclusions because they were "vague, not well supported with Dr. Moedl's findings, and inconsistent with the record as a whole." AR 4736. The ALJ erred in discounting Dr. Moedl's opinion for vagueness. Further, substantial evidence does not support the ALJ's conclusion that Dr. Moedl's opinions should be discounted because they were not well-supported and were inconsistent with the record as a whole.

1.   Vagueness

The first reason the ALJ provided for discounting Dr. Moedl's opinion is that it was too vague. She stated, "it is unclear how long exactly Dr. Moedl is opining the claimant can walk, lift, stand, or sit." *Id.* Although it is true that Dr. Moedl did not estimate precisely how long Plaintiff could walk, lift, stand, or sit, Dr. Moedl did clearly state that Plaintiff could do so for

6

less than two hours. This two-hour mark is significant because the Social Security Regulations'

guidance on breaks for sedentary workers allows for "a morning break, a lunch period, and an

afternoon break at approximately *2-hour intervals*." SSR 96-9p (emphasis added). An individual

who cannot work in these scheduled increments has more limited occupational options. *Id.*

Therefore, to the extent the ALJ's statement seeks clarification about the smaller increments of

time Plaintiff can walk, lift, stand, and sit, that clarification is irrelevant; the finding that she

cannot work in even two-hour increments indicates that she would require unscheduled breaks,

which would limit her ability to work. The limitation Dr. Moedl placed on Plaintiff's ability to

walk, lift, stand, and sit was phrased in terms that are common in the field and easily could have

been presented to the vocational expert ("VE") for an opinion on how this limitation erodes the

occupational base. *See Myers v. Astrue*, 870 F. Supp. 2d. 1164, 1172 (D. Colo. 2012) (failure to

consider testimony that three unscheduled breaks to lie down per week would be unacceptable in

the job market was clear error); *Lee v. Berryhill*, 690 F. App'x 589, 591 (10th Cir. 2017)

(referencing vocational expert testimony that typical employers do not permit unscheduled

breaks). Thus, to the extent the ALJ gave little weight to Dr. Moedl's opinion because Dr. Moedl

was vague about how long Plaintiff could walk, lift, stand, and sit, the ALJ committed error.

### 2. Support from Dr. Moedl's Own Findings

The ALJ's second reason for giving little weight to Dr. Moedl's opinion was that Dr.

Moedl's findings were not well-supported by his other findings. The ALJ considered Dr.

Moedl's limitations on walking, lifting, standing, and sitting to be inconsistent with his "findings

that the claimant has full strength and walks with a normal gait." AR 4736.[5] It is not obvious,

---

[5] As Plaintiff points out, references to Plaintiff's gait throughout the record refer to an abnormal, antalgic gait. For purposes of whether Dr. Moedl's limitation is consistent with his/her own findings, however, the Court credits Dr. Moedl's finding that Plaintiff had a normal gait at the time of her examination with Dr. Moedl.

however, that having a normal gait translates to an ability to walk, lift, stand, or sit for more than

two hours, and the ALJ did not provide any basis to draw one conclusion from the other.

In contrast, the ALJ, even as a non-medical layperson, could reasonably draw a

relationship between a person's strength and her ability to walk, lift, stand, or sit. Having normal

strength, however, does not necessarily mean that a person has the endurance to walk, lift, stand,

or sit for two hours. Here, Dr. Moedl, a medical expert, found both that Plaintiff had normal

strength and that she could not walk, lift, stand, or sit for two hours. In other words, it was Dr.

Moedl's medical opinion that, despite having normal strength, Plaintiff nonetheless could not

walk, lift, stand, or sit for two hours. In disagreeing and concluding that Plaintiff's normal

strength mandates the opposite conclusion, the ALJ, who is not a trained medical expert,

overrode, without citation to contradictory medical evidence or any other explanation, Dr.

Moedl's medical assessment. This constituted error. *Bryant v. Comm'r, SSA*, 753 F. App'x 637,

643 (10th Cir. 2018).

3.   Inconsistency with the Record as a Whole

The third reason the ALJ provided for discrediting Dr. Moedl's findings about Plaintiff's

ability to walk, lift, stand, and sit is that those findings are inconsistent with the record as a

whole. The ALJ then cited AR 5129, 5167, and 5200 because these aspects of the record

indicated "normal gait, normal reflexes, normal strength, and intact sensation." AR 4736.

Inconsistency with the medical record as a whole is, on its face, a valid reason to discredit a

doctor's opinion. *See Marshall v. Astrue*, 315 F. App'x 757, 761-62 (10th Cir. 2009). However,

as noted above, having "normal gait, normal reflexes, normal strength, and intact sensation" does

not necessarily equate to being able to walk, lift, stand, or sit for two hours. Indeed, despite

finding that Plaintiff had normal gait and normal strength, Dr. Moedl concluded that Plaintiff

*could not* walk, lift, stand, and sit for two hours.

8

Plaintiff cites to medical records that support Dr. Moedl's findings. She notes:

- Back, hip, and neck pain at various points from 2008 to 2018 (AR 1048,[6] 4482, 1393, 2234, 2508, 1893, 4712, 4698, 5216, 5210, 5208, 5177, 5151-52, 5155, 5143, 5145)

- Scoliosis diagnosed in 2009, 2010, 2013, 2014, 2017, and 2018 (AR 842-43, 2353, 3238, 4683-84, 5215-16, 5151-52) as well as rods inserted in Plaintiff's spine to address this condition (AR 376) and degenerative changes to Plaintiff's spine (AR 846)

- Mobility limitations or antalgic gait in 2009, 2011, 2017 and 2018 (AR 2250, 2253, 2261, 2268, 2308, 5215, 5210, 5157)

Doc. 25 at 12-14. Thus, Plaintiff argues that Dr. Moedl's findings about Plaintiff's limitations in walking, lifting, standing, and sitting are, contrary to the ALJ's findings, consistent with the rest of the record. In analyzing whether the ALJ considered the entire record and came to a decision with the support of substantial evidence, the Court keeps in mind that it may not substitute its discretion for that of the ALJ or reweigh the evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). As the Commissioner points out, the relevant question is not whether sufficient evidence exists to support Plaintiff's position. Even if the Court would have weighed the evidence differently than the ALJ, the Court's task is not to reweight the evidence; instead, it is to determine if evidence the ALJ cites "is overwhelmed by other evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

Here, however, the ALJ has rejected an examining doctor's assessment that Plaintiff cannot walk, lift, sit, or stand, for two hours. The primary evidence the ALJ cites to reject this opinion (normal gait and strength) is evidence Dr. Moedl already considered and, to the Court's knowledge, no other doctor reached an opposite conclusion about.[7] In other words, Dr. Moedl—

---

[6] The Court observes no indication of pain on this page of the record.

[7] The ALJ did note that, in addition to having normal gait and strength, Plaintiff also had "normal reflexes" and "intact sensation."

like the ALJ—considered Plaintiff's gait to be normal. But Dr. Moedl, who is the physician, nonetheless found that Plaintiff did not have the ability to walk, sit, or stand for the required two-hour increments. Therefore, Plaintiff's normal gait does not undermine Dr. Moedl's medical assessment because Dr. Moedl already took it into account. Although the ALJ did consider Plaintiff's scoliosis and, to a lesser extent, her antalgic gait and limited mobility, the ALJ does not indicate how her consideration of these limitations undermines Dr. Moedl's conclusion that Plaintiff cannot walk, lift, sit, or stand for two hours. Thus, nothing the ALJ referenced in the record as a whole supports the ALJ's decision to give little weight to the opinion of Dr. Moedl.

C.     Dr. Owen's Opinion

Dr. Owen performed a psychological consultative examination and issued an opinion in 2011. AR 417-19. Dr. Owen found that Plaintiff had no mental health conditions and that "[s]he reports that she is neither depressed nor anxious." AR 418. Dr. Owen's findings pursuant to a mental status exam were all normal, appropriate, or unremarkable. *Id.* Plaintiff's "inability to work is primarily based upon the affects that occur when she has a shunt malfunction. As mentioned previously, these include nausea, loss of equilibrium, her eyes jumping and being dizzy." *Id.* "She said that stress typically initiates the shunt malfunction." *Id.*

Without further explanation, Dr. Owen found the following limitations:

1.  [Plaintiff] can understand simple questions and instructions. She would have marked difficulty dealing with detailed, complex communication.

2.  She would have moderate difficulty dealing with stress in the workplace.

3.  She would have moderate difficulty interacting with others in an employment setting.

4.  She would have moderate difficulty focusing and persisting at most work tasks.

5.  She would have moderate to marked difficulty adapting to change in the workplace.

AR 419.

A previous ALJ opinion considered and accorded Dr. Owen's opinion "partial weight" because "his limitations on social functioning and adaptation are unfounded." AR 4504. The Court did not take issue with this conclusion in its previous Opinion. Instead, the Court reversed because "the ALJ's explanation concerns only [Plaintiff's] social functioning and does not include any discussion of Dr. Owen's opinions that [Plaintiff] has 'moderate to marked difficulty adapting to change in the workplace'; 'moderate difficulty dealing with stress in the workplace'; and 'moderate difficulty focusing and persisting at most work tasks.'" AR 4853 (citing AR 419). "The ALJ simply never mentions these limitations." *Id.* The Court explained that this is error under *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (ALJ's failure to explain why he rejected moderate restrictions on consulting mental health professional's RFC assessment warranted remand). Further, the Court rejected the Commissioner's position that "the ALJ need not have discussed each of the limitations Dr. Owen assessed because the ALJ otherwise accounted for those restrictions in her RFC." AR 4854-56.

On remand, therefore, the ALJ appropriately broke down the discussion of Dr. Owen's five assessed limitations and gave individual reasons for rejecting each limitation. AR 4736-37. The ALJ did not, however, combine specific reasons for rejecting each limitation with general reasons for providing Dr. Owen's opinion little weight. Of course, if the specific reasons to reject each limitation are sufficient, the ALJ need not also supply general reasons to discount the doctor's overall opinion. Here, the reasons the ALJ provided for discounting three of the five limitations Dr. Owens provided are sufficient. But substantial evidence does not support the particular reasons the ALJ provided to reject two of the limitations Dr. Owens assessed. Further,

the Court cannot consider general reasons the ALJ could have, but did not, consider in discounting Dr. Owen's opinion.[8]

### 1.    Dealing with Complex Communication

Dr. Owen found that Plaintiff would have marked difficulty dealing with detailed, complex communication. AR 419. The ALJ found that this opinion contradicts Plaintiff's score of 29/30 on her mini-mental status exam and other records indicating that Plaintiff can follow both simple and complex commands. *See* AR 4737 (citing AR 418, 5019). The ALJ has authority to give less weight to evidence that is contradicted in the record. *See Langley*, 373 F.3d at 1121 (inconsistency is "facially valid reason" to give less weight). Therefore, the ALJ acted within her authority and Plaintiff's argument fails.

### 2.    Dealing with Stress in the Workplace

Dr. Owen found that Plaintiff would have moderate difficulty dealing with stress in the workplace. AR 419. The ALJ found this opinion inconsistent "with the claimant's ability to tolerate the stress of a mini-mental state [sic] examination with an examiner she did not know" and with other findings demonstrating Plaintiff's "stable mood and appropriate affect." AR 4737 (citing AR 418, 4691, 5237). The ALJ's assertion about the stress of the examination does not appear grounded in any measurable standard; the connection between the ability to participate in

---

[8] In analyzing the "Paragraph B" criteria, the ALJ notes several generally applicable reasons that could have been used to support discounting Dr. Owen's opinions. For instance, she notes that at the time of the evaluation, Plaintiff was "taking her children to school, picking them up from school, taking a nap around noon, helping her children with homework, making dinner, bathing the children at night, riding horses, and working out at the gym." AR 4727. Dr. Owen's report clarifies that, at the time of the evaluation Plaintiff was a single mother and her children were 6 and 7 years old. AR 417. For purposes of paragraph B, the ALJ further notes there were no indications of abnormal thought processes during the exam, that Plaintiff functioned in at least the average range of mental ability, and that Dr. Owen did not diagnose Plaintiff with any mental impairments. AR 4728. The Court need not address whether the observations the ALJ made in her paragraph B analysis can be used to support the ALJ's decision to discount Dr. Owen's opinion at step four, however, because the Commissioner has not made such an argument.

a medical examination with a stranger and the ability to deal with workplace stress is not intuitive.

The portions of the record the ALJ cites do note Plaintiff's "stable mood and appropriate affect" and indicate that Plaintiff's affect was appropriate. AR 4691 and 5237. The records, however, say nothing about her mood. Further, despite being aware that Plaintiff had an appropriate affect during her examination and tolerated the stress of taking the examination, Dr. Owen concluded Plaintiff nonetheless had limitations in handling workplace stress and maintaining productivity. The ALJ's view that displaying an appropriate affect during an examination and tolerating the stress of the examinations equates to an ability to handle workplace stress and maintain productivity is insufficient to override a psychologist's opposite medical assessment. The Court therefore finds that the ALJ did not support with substantial evidence her decision to discount Dr. Owen's opinion regarding this limitation.

3.   Interacting with Others in an Employment Setting

Dr. Owen found that Plaintiff would have moderate difficulty interacting with others in an employment setting. AR 419. The ALJ found this opinion inconsistent with Dr. Owen's observation that Plaintiff was "neatly groomed and attired, friendly, cooperative, and spoke with clear speech." AR 4737 (citing AR 518, 5031, 5043). More importantly, the ALJ found this opinion inconsistent with records showing Plaintiff was "negative for any behavioral problems, confusion, or dysphoric mood." *Id*. The ALJ may decide which evidence is more persuasive when the record contains inconsistencies; it is not the Court's purview to re-weigh. *See Langley*, 373 F.3d at 1121; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

4.   Focusing and Persisting at Work Tasks

Dr. Owen found that Plaintiff would have moderate difficulty focusing and persisting at most work tasks. AR 419. The ALJ rejected this finding because Dr. Owen observed that the

claimant could spell the word "world" backwards and because Plaintiff testified she could operate a motor vehicle. AR 4737 (citing AR 419).[9] However, Dr. Owen noted that although Plaintiff possessed a driver's license, she had had headaches for the last few days, so her sister had driven her to the current appointment. AR 417. Plaintiff's nominal ability to operate a motor vehicle, therefore, is not necessarily indicative of her ability to focus and persist at work tasks. Additionally, it is not the ALJ's role to determine the medical significance of correctly spelling "world" backwards. Dr. Owen was aware that Plaintiff correctly spelled "world" backwards but nonetheless assessed her with a limitation in focusing and persisting at work tasks. The ALJ cited no medical or other evidence that contradicted Dr. Owen; therefore, it was error for the ALJ to substitute her assessment of the significance of correctly spelling "world" backwards with the significance Dr. Owen, a psychologist, assessed to this event.

5.    <u>Adapting to Change in the Workplace</u>

Dr. Owen found that Plaintiff would have moderate to marked difficulty adapting to change in the workplace. AR 419. The ALJ found this opinion inconsistent with Dr. Owen's lack of mental health impairment diagnosis and with Dr. Owen's report of Plaintiff's daily activities at the time of the exam. AR 4737 (citing AR 418). The Court agrees with the ALJ that Dr. Owen's report appears internally inconsistent. Dr. Owen detailed Plaintiff's activities of daily living, including caring for young children as a single mom; her pleasant demeanor; her lack of drug or alcohol-related issues; and that she is neither depressed nor anxious. Dr. Owen assessed no mental health diagnoses. In other words, the basis for his limitations is unclear. Because Dr. Owen did not identify any psychological issues besides "stress," the Court agrees this is sufficient for the ALJ to give his opinion about this limitation little weight.

---

[9] This citation appears to be an error; the test for spelling "world" backwards appears at AR 420.

However, in sum, the ALJ did not cite to substantial evidence that justifies discounting two of the five limitations Dr. Owen, the only doctor who provided an opinion related to Plaintiff's mental health, assessed. This was error.

## II.   Subjective Symptom Evidence

Plaintiff claims that the ALJ erred in evaluating the effects of her symptoms. Doc. 25 at 17. Specifically, Plaintiff objects to the ALJ's characterization of her strength, her headaches and migraines, her shunt stability, and her scoliosis. The Court rejects Plaintiff's arguments regarding the ALJ's discussion of her strength, her shunt stability, and her scoliosis. However, the Court agrees with Plaintiff that the ALJ erred in evaluating the effects of her headaches and migraines.

### A.   Legal Standard

Social Security Ruling ("SSR") 16-3p[10] instructs ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." 2017 WL 5180304, at *2. In evaluating whether a claimant has disabling pain, the reviewing court considers whether the claimant has proffered objective medical evidence of a pain-producing impairment; if so, whether there is a loose nexus between the claimant's subjective allegations of pain and the impairment; and if so, whether the claimant's pain is in fact disabling, considering both objective and subjective evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834 F.2d

---

[10] SSR 16-3p is applicable for decisions made on or after March 28, 2016, and superseded SSR 96-7p. *See* 2017 WL 5180304, at *13 n.27. SSR 16-3p eliminated the use of the term "credibility," in order to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2. The instructions for evaluating subjective allegations in both rulings are the same, so case law interpreting SSR 96-7p remains relevant. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017).

161, 163-64 (10th Cir. 1987)). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Id.*

The ALJs' assessments of subjective symptom complaints "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on objectively reasonable explanation over mere intuition," it has "not reduced [subjective symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence [s/]he relies on in evaluating the claimant's" subjective symptom evidence. *Id.* "Findings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Nonetheless, the ALJ cannot ignore relevant evidence or mischaracterize the evidence. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

B.   <u>Muscle, Strength, and Gait</u>

Plaintiff argues that the ALJ drew improper conclusions about her strength by considering the opinions of doctors who were performing neurological evaluations in an effort to examine Plaintiff's headaches. Doc. 25 at 18 (citing AR 4679, 5011, 5016, 5019, 5023, 5032, and 5065). Defendant counters that these qualified doctors still conducted these examinations and made orthopedic findings, even if their specialty was neurological. Doc. 31 at 13.

A doctor's specialty is one factor that bears on the weight to give that doctor's opinion. 20 C.F.R. § 416.927(c)(5). But Plaintiff cites to no rule that an opinion about one aspect of physical health is invalid simply because the examining doctor is investigating another aspect of the patient's health. Certainly, if Plaintiff had sought out an orthopedic specialist to examine her strength and muscle bulk, that specialist's opinion could be entitled to more weight than the opinion of a doctor performing a neurological exam on her body to see what role it might play in her headaches. However, Plaintiff cites to no evidence of the former in the record, and she advances no precedent to support the idea that the latter should be discounted out of hand.[11]

_____

[11] The case Plaintiff cites, *Praytor v. Commissioner, SSA*, 750 F. App'x 723, 727 (10th Cir. 2018), is inapposite. In this case, the Tenth Circuit found that the ALJ attempted to undermine a doctor's opinion using evidence that, in the Court's view, corroborated the doctor's findings about the plaintiff's pain. The applicability of the evidence to the doctor's specific findings was the concern, not the specialty of the doctor or type of examination the doctor was performing.

Rather, the Court agrees with this analysis from the District of Kansas:

> The Court does not share Plaintiff's concern with regard to the ALJ's reliance on these examinations. Even though Plaintiff was not seeking treatment for her back pain, both doctors included information from her visits that is relevant to her back pain. . . . Plaintiff does not contend that either doctor was unqualified to make these medical findings. Nor does she cite any authority that the ALJ could not rely on medical evidence simply because the primary purpose of the doctor's visit was unrelated to her back pain.

*Karla Marie L. v. Saul*, No. 18cv2699, 2020 WL 1638060, at *7 (D. Kan. Apr. 2, 2020).

Plaintiff also argues that while her strength, muscle bulk, and gait often appeared normal, she faced endurance limitations and could not maintain that strength and gait for a two-hour period without additional breaks. Doc. 25 at 17-18. The Court has already addressed this question in the context of Dr. Moedl's opinion: Plaintiff is correct that strength or gait during an office visit does not necessarily demonstrate the ability to perform at that level for two hours. But Plaintiff cites only to three pages of the record indicating abnormal gait or strength, Doc. 25 at 19, one of which the ALJ specifically references in her decision, AR at 4735 (citing AR 5210). The ALJ therefore considered the information Plaintiff would have her consider; the fact that the ALJ decided against Plaintiff on an ambiguous issue is not an error of law. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (record must demonstrate that ALJ *considered* all the evidence).

      C.    <u>Headaches and Migraines</u>

The ALJ found that Plaintiff's headaches and migraines were well-controlled on medication but added a limitation to Plaintiff's residual functional capacity by stating that she "must completely avoid unprotected heights and hazardous machinery." AR 4734. Although the ALJs receive substantial deference in the realm of assessing subjective symptom evidence, the ALJ must still demonstrate that she considered all the evidence and may not make mischaracterizations of the record. The Court finds the ALJ failed to accurately consider the record related to Plaintiff's headaches and migraines.

Plaintiff cites to a long list of medical visits in which she reported headaches or migraines to demonstrate that medication does not adequately control her symptoms. Doc. 25 at 20-23. To her credit, the ALJ does cite to many of these instances in a lengthy discussion on the subject. AR 4732-34. However, the ALJ makes many patently inaccurate statements about Plaintiff's headaches. For example, she states that Plaintiff "reported being well from the time of her shunt

18

revision in January 2011 until July 2013." AR 4733. This is incorrect; Plaintiff sought medical treatment for headaches in August 2011, October 2012, and June 2013, and she reported headaches to Drs. Moedl and Owen in December 2011. AR 261, 414, 417, 470, 525.

The ALJ also states that Plaintiff's "shunt imaging showed no abnormalities" during a June 2019 hospital stay. Although it is true that the record states that the shunt had no abnormalities, the same sentence indicates that a CT scan showed dilated ventricles. AR 4734, 5032. In fact, this abnormal imaging was the basis for Plaintiff's admission to the hospital for a three-day stay. *Id.* Additionally, the ALJ's statement that "the claimant admitted she 'rarely' has headaches" is inaccurate, as the claimant's actual admission was that she rarely had *morning* headaches when she took amitriptyline at night. AR 4734, 5276.

The ALJ asserts that the "effectiveness of the claimant's migraine medication" was an important factor in her analysis. AR 4734. But Plaintiff's testimony about the quick symptom relief her medication provides referred to her migraines in the year leading up to the 2020 hearing, *not* the decade-long headaches she had reported prior; she makes this distinction clear on the transcript page prior to the one the ALJ cited. AR 4765. Indeed, her doctor adjusted her medication dosages for her headaches as recently as July 2019, when she was experiencing migraines two to three times per week. AR 4734. Deeming her migraines well-controlled because medication afforded some relief is an oversimplification, especially considering her doctors' dissatisfaction with the effectiveness of her medical regimen caused them to repeatedly change that regimen over the course of many years. Doc. 25 at 22 (describing all the medication changes and adjustments in the same record pages the ALJ cites as support that Plaintiff's medication mostly worked). Granted, that Plaintiff's medical regimen needed to be changed periodically does not necessarily mean that the regimen was ineffective. The point here is that

Plaintiff received frequent medical treatment and medication adjustments related to continuing issues with headaches and migraines. This point combines with the mischaracterizations of the record described above.

Finally, the ALJ's claim that her RFC analysis "accounts for the claimant's headaches because it states she must completely avoid unprotected heights and hazardous machinery" is poorly explained. *See* AR 4734. This statement acknowledges that Plaintiff does have significant headaches. And, having someone who suffers significant headaches avoid unprotected heights and hazardous machinery is reasonable. This limitation, however, does not fully take into account evidence of the debilitating nature of Plaintiff's headaches.

Plaintiff's testimony is that her headaches require her to lie down, that the headaches are exacerbated by activity, and that her migraines are sensitive to sound and light so she must remain in the dark until they pass. AR 4533-34, 4765-66. If the ALJ believes her, the conditions addressing unprotected heights and hazardous machinery are inadequate. If the ALJ only believes her headaches are severe enough to require her to avoid unprotected heights and hazardous machinery, but not so severe as to justify other limitations, the ALJ needs to provide an explanation as to which evidence she is crediting and which evidence she is not. Given the evidence in the record, the Court cannot follow the ALJ's reasoning as to why limitations related to unprotected heights and hazardous machinery are appropriate, but other limitations are not. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (ALJ should "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning" (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

The Court further observes that Plaintiff's headaches and subjective symptom complaints have ample support from objective evidence in the record. Plaintiff has complained of headaches for many years and her doctors have responded by trying various medication regimes to varying degrees of success. Plaintiff's brain shunt has been adjusted multiple times and leads to swelling in her brain and multiple anomalies on scans and other testing. This is not a case where an ALJ is making a credibility assessment on a blank slate or in the face of a scant record and little objective support. As such, an inaccurate assessment of the objective evidence in the record is particularly harmful.

D.    Shunt Stability

Plaintiff states that the ALJ "relied on the fact that [Plaintiff's] shunt had been stable for 'most of the period at issue,' to discredit [Plaintiff's] reports of symptoms." Doc. 25 at 25, citing AR 4732. Plaintiff notes that she has other medical concerns and symptoms aside from issues pertaining to her shunt. *Id.* However, the ALJ clearly considered Plaintiff's medical history related to issues other than her shunt, including reports of migraines (AR 4734), scoliosis (AR 4734-35), and gait (AR 4735). Plaintiff's argument is sparse on this point and does not suffice to demonstrate legal error by the ALJ.[12]

E.    Scoliosis and Mobility Limitations

Plaintiff challenges the ALJ's finding that her scoliosis is only a "minimal disability" because the ALJ relied on Dr. Moedl's report to make that finding—a report to which the ALJ explicitly assigned little weight. Doc. 25 at 25; AR 4735. The ALJ gave little weight specifically

---

[12] The Court notes that the ALJ made an incomplete statement regarding Plaintiff's shunt: that it has been "generally stable since May 2011." AR 4734. The ALJ's statement refers to the results of diagnostic imaging, but the ALJ's own statements earlier in her opinion make it clear that Plaintiff has required adjustments and shunt revisions after 2011. *See id.* at 4732-34. However, Plaintiff did not raise this issue in the briefing.

to Dr. Moedl's opinion that Plaintiff could walk, lift, stand, or sit in a way that was "fairly normal" but "less than the two hour time that you usually have as the limit." *See* AR 4736 (quoting AR 415). The ALJ did not assign weight to the rest of Dr. Moedl's opinion; she gave little weight to "these opinions." *Id.* Therefore, the ALJ did not contradict herself here.

In the alternative, Plaintiff argues that Dr. Moedl's report is too stale because it was issued in 2011 and the ALJ made her findings in 2020. Doc. 25 at 25-26. As an initial matter, the Court points out that Plaintiff did not have qualms about the staleness of Dr. Moedl's opinion when she argued that the ALJ wrongly accorded portions of it little weight. More to the point, however, the ALJ also considered evidence from after 2011. Analyzing older evidence alongside newer evidence is appropriate. *See Trujillo v. Commissioner, SSA*, 818 F. App'x 835, 840 (10th Cir. 2020).[13]

Plaintiff also claims that the ALJ mischaracterized the evidence she cited and disregarded more recent evidence indicating that Plaintiff could not perform prolonged activities. She states that the ALJ chose only a few pages of a lengthy record on which to base her findings of symmetric gait, intact sensation, and a normal motor exam. Doc. 25 at 25. Plaintiff emphasizes context, such as the fact that the ALJ considered her ambulatory when she was only ambulatory with assistance or the fact that the ALJ classified her gait as normal during a time when, although

---

[13] Plaintiff also states that the agency erred in following the Appeals Council's instruction to provide a consultative examination. Doc. 25 at 26 (citing AR 4561-62). The Appeals Council's language, however, does not require the ALJ to provide a consultative examination; rather, it requires the ALJ to obtain updated evidence, which "may include, if warranted and available, a consultative physical examination and medical source statements about what the claimant can still do despite the impairments." AR 4561-62. Plaintiff does not provide any indication about why a consultative physical examination would be warranted, available, or necessary in this case. *See Hawkins v. Charter*, 113 F.3d 1162, 1167-68 (10th Cir. 1997) (in a counseled case, if counsel does not request a consultative examination, the ALJ is not under a duty to provide one unless the record clearly establishes a need).

her gait *was* normal, her mobility was weak. *See* AR 929, 936. These arguments are insufficient;

the context on these points does not so significantly change them that the ALJ's decision lacks

substantial evidence, especially considering other citations the ALJ made to records indicating a

normal gait. *See* AR 5734 (citing, *inter alia*, AR 5011, 5017, 5019, 5023, and 5065). Plaintiff

also cites to only a few pages indicating antalgic gait (Doc. 25 at 13-14, citing AR 5210 and

5215); the evidence of gait issues is not so overwhelming as to preclude the finding that

Plaintiff's gait was symmetrical or unremarkable.

Plaintiff criticizes the age of the opinions from Dr. Green and Dr. Gelinas, and she cites

to her own testimony to indicate her abilities and limitations. Doc. 25 at 27. The age of the

opinions from Dr. Green and Dr. Gelinas is a consideration in how much weight to give them,

but as explained above, an ALJ may consider older evidence alongside newer evidence to

determine whether the older evidence is consistent with the record as a whole. *Trujillo*, 818 F.

App'x at 840. The Court, therefore, rejects Plaintiff's argument on this point.

Finally, Plaintiff argues that the RFC errors tainted the VE's testimony and are therefore

harmful error. Doc. 25 at 28. This is clearly true, and the Commissioner does not argue otherwise

(except to reiterate her position that there was no RFC error). Doc. 31 at 22.

## III.    Request for Award of Benefits

Plaintiff requests an outright award of benefits, and that the Court award benefits

backdating to a prior application because the ALJ failed to rule on a request to reopen the prior

application. Doc. 25 at 28-29.

The Court will not review the request to award benefits dating from the prior application.

"[A] district court does not have jurisdiction to review the Commissioner's discretionary

decision not to reopen an earlier adjudication." *Costello v. Barnhart*, 125 F. App'x 920, 921-22

(10th Cir. 2005) (citing *Blair v. Apfel*, 229 F.3d 1294, 1295 (10th Cir. 2000) and *Califano v.*

*Sanders*, 430 U.S. 99, 107-08 (1977)) (internal quotation marks and alteration omitted). There are two exceptions: if the plaintiff raises a "colorable" constitutional claim; or if the Commissioner's decision constitutes a de facto reopening of the earlier filed claim. *Id.*; *Taylor for Peck v. Heckler*, 738 F.2d 1112, 1114-15 (10th Cir. 1984). Plaintiff does not make either of those arguments in this case.[14]

The Court will grant the request to award benefits outright. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional factfinding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotation marks omitted). In *Barnhart*, the Tenth Circuit awarded benefits outright on a five-year-old application.

The present application is now nearly eleven years old, filed May 10, 2011. AR 12. An ALJ first denied the application in 2013. AR 9. Before this Court, the Commissioner agreed to an order of remand. AR 4551-54. The subsequent Appeals Council's order instructed the ALJ to obtain updated evidence regarding Plaintiff's physical impairments, to give further consideration to Dr. Moedl's opinion, or to obtain evidence from a medical expert or from a new consultative examiner. AR 4561-62.

---

[14] The Commissioner does not raise this argument in her brief. Nonetheless, the Court inquires into its subject-matter jurisdiction sua sponte. *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

In 2016, the ALJ denied the application again. AR 4495. After the Appeals Council denied review, AR 4486, this Court reversed and remanded after briefing. AR 4848-4858. The Court found the ALJ did not include any discussion of Dr. Owen's opinions that Plaintiff has moderate to marked limitations in the areas of adaptation, dealing with stress, focus, and persistence; and did not otherwise properly analyze the basis for Dr. Owen's opinion concerning Plaintiff's limitations. *Id.*

A different ALJ denied the application again in 2020, AR 4721, and the Court has again reversed. The record before the Court today is substantially the same as the record before the Court when it reversed on May 11, 2021. The Court has no reason to believe that remanding for further factfinding will lead to additional examinations that would change the record. Moreover, the age of this case and fact that it has already been to the district court three times militates against remanding for further factfinding. The Court therefore reverses and orders an award of benefits outright.

## **CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's Motion To Reverse And Remand For Rehearing, With Supporting Memorandum, Doc. 22, and remands the case for an immediate award of benefits.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**